10-2437-cv
Vincent v. Comm'r of Social Security

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term 2010

(Argued: May 3, 2011          Decided: July 8, 2011)

Docket No. 10-2437-cv

------------------------------------------------------x

LORETTA VINCENT,

         Plaintiff - Appellant,

                  -- v. --

COMMISSIONER OF SOCIAL SECURITY,

         Defendant - Appellee.

------------------------------------------------------x

B e f o r e :  WALKER, CALABRESI, and WESLEY, Circuit Judges.

     Appeal from an order of the United States District Court for the Northern District of New York (Victor E. Bianchini, Magistrate Judge) reducing by two-thirds the attorney's fees awarded following a successful appeal from the administrative denial of an application for Social Security disability benefits. We hold that the failure of claimant's counsel to develop the administrative record as to issues collateral to the disability determination does not constitute a "special circumstance"

1

warranting a fee reduction under the Equal Access to Justice Act. We also hold that the district court abused its discretion in reducing the fee award based on its sua sponte critique of counsel's billing records and its assessment that the time billed was excessive.

REVERSED and REMANDED.

MARK CURLEY, New York, NY, for Plaintiff-Appellant.

VERNON NORWOOD, Special Assistant U.S. Attorney, Social Security Administration (Richard S. Hartunian, United States Attorney, Northern District of New York, Stephen P. Conte, Regional Chief Counsel, Social Security Administration, on the brief), New York, NY for Defendant-Appellee.

Catherine M. Callery, Louise M. Tarantino, Empire Justice Center, Rochester, NY, for Amicus Curiae Empire Justice Center.

JOHN M. WALKER, JR., Circuit Judge:

Plaintiff-Appellant Loretta Vincent appeals from an order of the United States District Court for the Northern District of New York (Victor E. Bianchini, Magistrate Judge) that reduced by two-thirds the attorney's fee award she requested for successfully appealing from the administrative denial of her application for disability benefits. The district court, attributing gaps in the administrative record to Vincent's counsel, concluded that this alleged deficiency constituted "special circumstances" justifying

2

a reduction in the attorney's fees awarded under the Equal Access to Justice Act.  We hold that the failure of a claimant's attorney to develop the administrative record on issues collateral to the disability determination does not constitute a "special circumstance" warranting a reduction in attorney's fees. We also hold that the district court abused its discretion in reducing the fee award based on its sua sponte critique of counsel's billing records and its conclusion that the time billed was excessive because no novel issues were raised.

**BACKGROUND**

Attorney Mark Schneider represented Vincent in her successful appeal from the administrative denial of her claim for disability benefits.  His efforts at getting paid for those services have been less successful.  After ruling in Vincent's favor on the merits, the district court chided Schneider for apparent deficiencies in his representation and awarded only one-third of the amount requested in Vincent's motion for attorney's fees.  Vincent now appeals from that order.

Vincent applied to the Social Security Administration for disability insurance benefits on November 23, 2005.  After an initial denial, Vincent requested a hearing and appeared before Administrative Law Judge ("ALJ") J. Lawson Brown, who rejected the application on December 20, 2007.  On August 21, 2008, the Social Security Appeals Council ("Appeals Council") denied

3

Vincent's request for review, making the ALJ's decision a final order of the Commissioner of Social Security ("Commissioner"). On September 9, 2008, Vincent filed a complaint in the district court challenging the Commissioner's final order. Schneider represented Vincent at every step of this process.

Vincent based her benefits application on a claim that a work-related back injury had rendered her unable to work as of August 2, 2004. To determine whether or not Vincent was disabled as defined by the Social Security Act, the ALJ engaged in the five-step sequential analysis prescribed by regulations. See 20 C.F.R. §§ 404.1520, 416.920. In finding her not to be disabled, the ALJ put significant weight on his negative assessment of Vincent's credibility. While acknowledging that Vincent's "medically determinable impairment could reasonably be expected to produce the alleged symptoms," the ALJ found that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." Vincent's disability report listed ten years of full-time factory employment from 1994 to 2004, but her earnings records reflected less than three years of work in that period. Vincent's statements to the Social Security Administration therefore suggested, according to the ALJ, "that she tends to exaggerate." The ALJ's review of Vincent's medical records, including a doctor's recommendation, unheeded by Vincent, that she attend

4

physical therapy or a "back school" program, further "call[ed] into question [Vincent's] credibility." The ALJ also observed that Vincent's assertion of having been enrolled in special education through tenth grade was not "corroborated by the records" of the school district, which was unable to locate any special education records in Vincent's name. Having discounted Vincent's own account of her impairment based on these credibility concerns, the ALJ concluded that she had the residual functional capacity to perform light work and was not disabled. The Appeals Council denied review.

On March 30, 2010, the district court reversed and remanded because the ALJ failed to develop the record as to several issues. First, the ALJ could not rely on Vincent's alleged noncompliance with prescribed treatment as a basis for denying benefits, or even for an adverse credibility finding, without allowing her to explain why she did not follow any such treatment. The ALJ also erred by relying, without further inquiry, on the apparent exaggeration in Vincent's work history (which could have resulted from a data entry error) and on the absence of corroboration for Vincent's special education history (which may have been attributable to the use of Vincent's married name in the records request). Finally, the district court found that the ALJ should have considered the effect of Vincent's obesity in assessing whether she was disabled. In light of these

5

gaps in the record, the district court remanded for further administrative proceedings.

The district court did not limit its criticisms to the ALJ, however. It also blamed Schneider, who represented Vincent at the administrative hearing: "the underdeveloped issues clearly could have, and should have, been addressed by [Vincent's] counsel at the administrative stage" as part of his "ethical obligation to act with reasonable diligence." Once the ALJ had denied Vincent's applications, Schneider again faltered – in the district court's view – by waiving the filing of a brief when he requested Appeals Council review. Questioning whether Schneider's alleged lapses constituted "a strategic and deliberate choice," the district court anticipated examining his conduct further when Schneider applied for attorney's fees.

On April 27, 2010, Vincent moved the district court for an award of $8,272.00 in attorney's fees. Vincent sought fees for 47 hours of Schneider's time: 24.1 hours spent working on the appeal to the district court; 13.9 hours on the fee petition and brief; and 9.0 hours on the reply brief and affidavit for the fee petition. In a May 24, 2010 order, the district court granted the motion in part and denied it in part, reducing the requested fee award by two-thirds based on a number of purported deficiencies. The district court held that Schneider's failure to develop the record constituted "special circumstances" that,

under the Equal Access to Justice Act, would render a full award "unjust." See 28 U.S.C. § 2412(d). In addition, the district court viewed the length of time Schneider billed for preparing the fee application as "clearly excessive and unreasonable." The district court also expressed concern that Schneider's billing records provided only "conclusory explanations" for "several lengthy increments of time" and improperly intermingled legal and clerical tasks. To account for these flaws, the district court awarded only $2,757.33 in attorney's fees, one-third of the amount requested. Vincent now appeals from this order.

**DISCUSSION**

The Equal Access to Justice Act ("EAJA") provides that "a court shall award to a prevailing party . . . fees and other expenses . . . incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). It is undisputed that Vincent prevailed before the district court and that the position of the United States was not substantially justified. In assessing Vincent's entitlement to fees, however, the district court concluded that the deficiencies referred to above were "special circumstances" justifying a substantial

7

reduction in the fees awarded. Our review of that decision "is narrow; we will only reverse if we find the court abused its discretion." United States v. 27.09 Acres of Land, 43 F.3d 769, 772 (2d Cir. 1994). A district court abuses its discretion "when (1) its decision rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or (2) its decision – though not necessarily the product of a legal error or a clearly erroneous factual finding – cannot be located within the range of permissible decisions." In re Holocaust Victim Assets Litig., 424 F.3d 158, 165 (2d Cir. 2005) (quoting Zervos v. Verizon N.Y., Inc., 252 F.3d 163, 169 (2d Cir. 2001)).

Vincent argues that the district court abused its discretion in denying the full amount of fees requested in her motion. She contends that Schneider's representation was not deficient and therefore cannot constitute "special circumstances" rendering a full award unjust. She further argues that the time billed on the fee application was appropriate because a novel issue was raised, and that the district court, by evaluating the billing entries sua sponte, improperly denied Schneider the opportunity to respond to its concerns. The Commissioner responds that the district court acted within its discretion and asks us to affirm.

I.

The EAJA's "special circumstances" exception is a "safety valve" that gives "the court discretion to deny awards where

8

equitable considerations dictate an award should not be made." Scarborough v. Principi, 541 U.S. 401, 422-23 (2004) (quoting H.R. Rep. No. 96-1418, at 11 (1980)). The contours of that safety valve are indistinct. The Second Circuit has spoken only twice in published opinions to the question of what constitutes "special circumstances [that] make an award unjust," and in neither case did it address whether – or to what extent – deficiencies in counsel's performance may justify a denial or reduction in EAJA fees. See Oguachuba v. INS, 706 F.2d 93 (2d Cir. 1983); United States v. 27.09 Acres of Land, 43 F.3d 769 (2d Cir. 1994). With those decisions as our baseline, we must decide whether the district court abused its discretion in applying the "special circumstances" exception in this case.

In Oguachuba, we affirmed the district court's denial of attorney's fees under the EAJA where the petitioner's own conceded history of repeated and flagrant misconduct caused the improper incarceration that he successfully challenged. John Oguachuba, a Nigerian citizen, was granted a writ of habeas corpus based on a violation by the Immigration and Naturalization Service ("INS") of a statutory six-month limit on the detention of any alien under final order of deportation. Oguachuba, 706 F.2d at 96. Oguachuba then sought attorney's fees under the EAJA as the prevailing party in that action. Id. at 96-97. Oguachuba's history of misconduct was little short of extraordinary: after overstaying a student visa, Oguachuba

9

repeatedly flouted a deportation order by lying to INS officials, fleeing INS custody, delaying the procurement of travel documents from the Nigerian consulate, and flying back to New York immediately after having been deported to Nigeria. Id. at 94-96. Oguachuba's incarceration exceeded the six-month limit only because the "recalcitrance of Nigerian officials" prevented INS officials from obtaining the travel documents necessary to re-deport him. Id. at 96. We held that "Oguachuba's extraordinary persistence in evading the lawful efforts of the INS to deport him to Nigeria, his flagrant contempt for United States law and the fact that his own decision not to acquiesce in deportation caused his incarceration constitute the 'special circumstances' which make it inequitable to award him attorneys' fees under the EAJA." Id. at 94.

We have also affirmed the denial of attorney's fees under the EAJA for a party who played an only marginal role in the litigation. The attorney's fees requested in 27.09 Acres of Land related to "a discrete early phase of the litigation" in which the claimant "achieved nothing but its own intervention." 43 F.3d at 771. The claimant's "efforts in the later, productive phase of the litigation were marginal, duplicative and unnecessary because of the laboring oar taken by parties whose fees are not recoverable under EAJA." Id. Because "the claim of the prevailing parties rest[ed] largely on a result to which the claimant made no contribution," we held that "[g]eneral equitable

10

principles support the district court's finding that an award of fees would have been unjust." Id. at 773-75.

A prevailing party can therefore be denied attorney's fees under the EAJA for "special circumstances" when his own misconduct created the circumstances that led to the litigation, see Oguachaba, 706 F.2d at 94, and when that party's contributions to the litigation's success were "marginal, duplicative and unnecessary," see 27.09 Acres, 43 F.3d at 771. These two examples of "special circumstances," while illustrative, do not define the exception. Indeed, if the "special circumstances" exception is to function as an equitable "safety valve," its contours can emerge only on a case-by-case basis.

When the exception is invoked in the context of the adequacy of counsel's representation, however, we think greater clarity is needed if only because counsel must know the parameters of their responsibilities. The EAJA's fee-shifting provision is meant to reduce the "economic deterrents to contesting governmental action" and "the disparity between the resources and expertise of . . . individuals and their government." H.R. Rep. No. 96-1418, at 5-6 (1980), reprinted in 1980 U.S.C.C.A.N. 4984, 4984. The EAJA provides access to justice by encouraging access to counsel, which not only ensures "the thoughtful presentation and consideration of opposing views," but also assists the government in "refining and formulating public policy." Id. at 10,

11

reprinted in 1980 U.S.C.C.A.N. at 4988. That goal is not advanced if an indeterminate standard is applied to reduce or deny a fee award based on alleged deficiencies in representation. "[I]t is common sense that increasing the risk that an attorney will not receive a fee award will inevitably decrease the willingness of attorneys to undertake representation in these kinds of cases." Astrue v. Ratliff, 130 S. Ct. 2521, 2531 (2010) (Sotomayor, J., concurring).

Clarity is of heightened importance in the context of Social Security appeals, which predominate among the cases in which EAJA awards are made. Social Security adjudications represent a unique variant from the traditional model of adversarial litigation. "Social Security disability determinations are investigatory, or inquisitorial, rather than adversarial." Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks omitted). The duty of the ALJ, unlike that of a judge at trial, is to "investigate and develop the facts and develop the arguments both for and against the granting of benefits." Butts v. Barnhart, 388 F.3d 377, 386 (2d Cir. 2004) (quoting Seavey v. Barnhart, 276 F.3d 1, 8 (1st Cir. 2001)), reh'g granted in part and denied in part, 416 F.3d 101 (2d Cir. 2005). Still, counsel is not relieved of the duty to provide competent representation, including the obligation "to assist the claimant in bringing to [the ALJ's] attention everything that shows that the claimant is disabled." See 20 C.F.R. § 404.1740(b)(1). Because of the ALJ's

12

duty to investigate, if counsel's entitlement to fees is questioned due to an undeveloped record, it must be clear that counsel bore primary responsibility for those deficiencies before the fee recovery is reduced. That was the case in Bryant v. Apfel, 37 F. Supp. 2d 210, 213 (E.D.N.Y. 1999), in which EAJA fees were denied to a prevailing plaintiff whose attorney's failure to "seek or produce critical medical records from the period of plaintiff's claimed disability . . . made it impossible to determine whether plaintiff was, in fact, entitled to disability benefits."

Those are not, however, the facts in this case. The district court purports to follow Bryant, but in reality goes beyond it. Unlike counsel in Bryant, Schneider fulfilled his obligation to present evidence establishing Vincent's disability. The denial of benefits at the administrative level was based not on the absence of such evidence, but upon the ALJ's refusal to credit it. The deficiencies in the record that the district court cited all relate to the ALJ's negative assessment of Vincent's credibility. In the circumstances of this case, in which the ALJ gave Vincent no notice of his credibility concerns, it was the ALJ's responsibility to develop the facts related to this collateral issue. For example, the ALJ cited Vincent's noncompliance with treatment recommendations without having raised the issue at the hearing or otherwise allowing Vincent to address it. The ALJ also relied on the discrepancy between

13

Vincent's earnings record – which showed less than three years of employment – and a form she submitted listing ten years' full-time factory employment as evidence of her tendency to exaggerate. Again, however, the ALJ never questioned Vincent about the inconsistency or flagged it as a potential credibility concern.

The district court erred in concluding that Schneider shared responsibility with the ALJ for these omissions. In the district court's view, Schneider should have identified the discrepancy in Vincent's work history and preemptively addressed it, and also should have developed the record to explain Vincent's noncompliance with treatment recommendations. The district court demanded too much of counsel. If we endorsed the district court's position, counsel would have to anticipate and refute all conceivable credibility issues to be assured recovery of attorney's fees after prevailing on appeal. This is not, nor should it be, the bar against which representation in Social Security matters is assessed for purposes of awarding EAJA fees. Although refuting potential credibility questions before they arise and without notice as to their potential significance may be an effective strategy, it could also generate unnecessary costs in a context where efficiency and economy are at a premium. Counsel's failure to anticipate collateral issues thus cannot constitute "special circumstances" justifying a denial or reduction in attorney's fees on appeal. The equitable "special

14

circumstances" exception, which applies only when an attorney's fee award would be "unjust," is not so broad. Where a plaintiff prevails in a Social Security appeal by winning remand to fill gaps in the record, "special circumstances" do not justify a reduction in or denial of attorney's fees if plaintiff's counsel does not reasonably bear responsibility for the evidentiary deficit.

The district court's approach does not accord with the realities of representation in the Social Security disability context. The limited resources of clients and legal service providers demand that counsel act with expediency. It would be unreasonable to insist that counsel pursue issues collateral to the medical disability determination without any notice from the ALJ that such issues are likely material to the outcome. This is particularly true in light of the ALJ's independent duty to develop the record.

The deficits in the record caused by the ALJ's failure to investigate and to notify counsel of his concerns are illustrative. Schneider explained in an affidavit that the report that erroneously listed Vincent's ten-year work history was prepared by a Social Security Administration employee, not Vincent, and therefore could not have been probative of her credibility. Schneider therefore had no reason, absent notice from the ALJ, to devote any resources to addressing what appeared to be a nonexistent credibility issue.

15

The district court further faulted Schneider for declining to submit a brief to the Appeals Council. Granting an unreduced attorney's fee award would, in the district court's view, effectively reward Schneider for "saving" his arguments for the district court. However, the decision not to file a brief before the Appeals Council fell well within Schneider's tactical discretion. The regulations "permit - but do not require - the filing of a brief with the Council (even when the Council grants review)." Sims v. Apfel, 530 U.S. 103, 111 (2000); see also 20 C.F.R. § 404.975 ("Upon request, the Appeals Council shall give you and all other parties a reasonable opportunity to file briefs or other written statements about the facts and law relevant to the case."). The Supreme Court held in Sims that Social Security claimants "who exhaust administrative remedies need not also exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues." 530 U.S. at 112. The Supreme Court declined to impose an exhaustion requirement due to the non-adversarial nature of Social Security proceedings and appeals, in which "[t]he Council, not the claimant, has primary responsibility for identifying and developing the issues." Id. Given that neither the regulations nor the exhaustion rules require the filing of a brief before the Appeals Council, the decision not to do so is not a "special circumstance" making a full award of attorney's fees unjust.

16

Counsel representing Social Security claimants cannot be penalized with a reduction in attorney's fees for failing to address issues collateral to the disability determination as to which counsel had no notice. Thus, responsibility for the gaps in Vincent's administrative record fell exclusively on the ALJ. Schneider's representation was in no way deficient; to the contrary, it appears to have been more than adequate. The district court therefore abused its discretion in concluding that "special circumstances" warranted a reduction in the EAJA award in this case.

II.

The district court cited two other reasons to justify its sharp reduction in the attorney's fee award: the length of time Schneider billed for the application for attorney's fees, and the quality of Schneider's billing records. Nearly half of the 47 hours that Schneider billed were for his work on the EAJA fee motion and reply, a figure the district court concluded was "clearly excessive and unreasonable." The district court also criticized Schneider's billing entries, which it felt were insufficiently detailed and appeared to merge clerical tasks with legal ones.

The district court enjoys broad discretion in determining the amount of a fee award. See Hensley v. Eckerhart, 461 U.S. 424, 437 (1983). Such discretion "is appropriate in view of the district court's superior understanding of the litigation and the

17

desirability of avoiding frequent appellate review of what essentially are factual matters." Id.; see also Comm'r, INS v. Jean, 496 U.S. 154, 161 (1990) (applying Hensley standard to EAJA fee determination once party has met EAJA's eligibility requirements). When "the documentation of hours is inadequate," the district court "may reduce the award accordingly" but must "provide a concise but clear explanation of its reasons for the fee award." Hensley, 461 U.S. at 433, 437.

Although we respect the district court's ample discretion to reduce a fee award, deference is not warranted when the reduction rests on an erroneous premise. Vincent justified the 22.9 hours Schneider billed for the EAJA application and reply as necessitated by the novelty of the district court's construction of the "special circumstances" exception. The district court, by contrast, found that Vincent's case "did not involve issues of a particularly novel or complex nature." Vincent is correct that this case presented a novel question; indeed, we have not identified any precedents in which EAJA fees were reduced under comparable reasoning. It is therefore unsurprising that the EAJA briefing here would demand more attention and time than a standard fee application. Furthermore, by rebuking Schneider in the remand order, which preceded Vincent's fee motion, the district court alerted Schneider that it viewed his entitlement to fees with skepticism. That alone made this an atypical EAJA application, one that required Schneider to concentrate more

18

effort than usual in convincing the district court that he had earned the fees requested. The district court therefore appears to have underappreciated the degree of effort warranted by the EAJA motion.

We also question the district court's <u>sua sponte</u> decision to address the quality of Schneider's billing records without allowing him to respond to its concerns. The district court noted with disapproval that Schneider accounted for lengthy increments of time with cursory explanations such as "Research, draft brief," making it difficult to assess the appropriateness of the time spent. According to the district court, Schneider also improperly billed for clerical tasks like "index record," and combined clerical and legal tasks in single entries without differentiating the two. The Commissioner never raised the issue of inadequate records; his opposition to Vincent's EAJA motion was based only on "special circumstances" and the allegedly excessive hours billed on the EAJA application. Schneider first learned of the district court's record-keeping concerns only when he was penalized for them in the EAJA fee order. Had Schneider been given the opportunity to address these concerns, he likely could have answered them, at least in part. For example, he has now explained that "index record" is not a clerical task, but refers to his review of the record for facts supporting his client's claim.

19

Although we do not agree with Vincent's contention that an evidentiary hearing was required here, the district court erred in depriving Schneider of the opportunity to respond to its criticisms.  An evidentiary hearing may be necessary "if it is evident that the material facts necessary [to determine the fee award] are genuinely in dispute and cannot be resolved from the record."  Farbotko v. Clinton Cnty., 433 F.3d 204, 209 (2d Cir. 2005) (quoting Crescent Publ'g Group, Inc. v. Playboy Enters., Inc., 246 F.3d 142, 147 (2d Cir. 2001)).  The evidentiary hearing in Farbotko was necessary to determine that district's "prevailing market rate," a factual question that required "an evaluation of evidence proffered by the parties."  Id.  Because the only factual questions here relate to the interpretation of Schneider's billing records, the need for an evidentiary hearing is unlikely.  Before relying on the perceived billing flaws as a basis for reducing the attorney's fee award, however, the district court should have given Schneider notice of its concerns and allowed the attorney to address them.[1]  That way, the district court would have been the first to assess Schneider's explanation of his billing practices, which is appropriate given

---

[1]    We decline Vincent's invitation to adopt the Third Circuit's rule that "a court may not reduce counsel fees sua sponte as 'excessive, redundant, or otherwise unnecessary' in the absence of a sufficiently specific objection to the amount of fees requested."  United States v. Eleven Vehicles, 200 F.3d 203, 211 (3d Cir. 2000).  The problem here was not that the district court raised the issue sua sponte, but that it did so without giving counsel prior notice of its concerns.

20

its greater familiarity with the context in which the legal work was performed.

                                  III.

For the foregoing reasons, we cannot affirm the district court's fee reduction; neither can we conclude, however, that Schneider is due the full award requested.  After giving Schneider an opportunity to address the billing record issues, the district court may award the fees in full, or it may still conclude that excessive or inadequate billing warrants some reduction.  While there are no "special circumstances" that would render a full fee award unjust, the district court continues to have the discretion to adjust the fee award if there are valid reasons for doing so.  We therefore remand for further proceedings consistent with this opinion.

We note that this is the second time in as many years we have reversed an EAJA fee order by this magistrate judge reducing or denying fees requested for Schneider's work.  See Burger v. Astrue, 363 F. App'x 73 (2d Cir. 2010).  In Burger, as in the present case, we rejected the district court's assessment that Schneider bore responsibility for failing to develop the record. When circumstances "might reasonably cause an objective observer to question [the judge's] impartiality," we have the power to remand a case to a different judge.  Pescatore v. Pan Am. World Airways, Inc., 97 F.3d 1, 21 (2d Cir. 1996) (quoting United States v. Microsoft Corp., 56 F.3d 1448, 1463 (D.C. Cir. 1995)

21

(per curiam)) (alteration in original).  We believe it would be prudent to do so here.  We therefore order that on remand this matter be transferred to a different judge.

**CONCLUSION**

For the foregoing reasons, the judgment of the district court is REVERSED and REMANDED for proceedings consistent with this opinion, with instructions to assign the case to a different judge.